UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ONE MAPLE STREET ASSOCIATES LIMITED PARTNERSHIP, | ) ) ) ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 04-12222-PBS |
| BRUEGGER'S CORPORATION and BRUEGGER'S ENTERPRISES, INC. | ) ) ) ) | |
| *Defendants.* | ) ) | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BRUEGGER'S ENTERPRISES, INC.'S MOTION FOR SUMMARY JUDGMENT

The Defendant, Bruegger's Enterprises, Inc. ("Enterprises"), respectfully submits this Memorandum of Law in support of its motion for summary judgment. There is no genuine issue of material fact that Enterprises did not assume the liabilities of Bruegger's Corporation ("Bruegger's"), and that, as a matter of law, Enterprises cannot be charged with those liabilities. Accordingly, Enterprises is entitled to summary judgment as a matter of law.

### INTRODUCTION

The plaintiff seeks to hold Enterprises liable for a lease that Enterprises never signed for a property that Bruegger's abandoned long before Enterprises acquired its assets. The plaintiff's attempt contradicts the long-established rule that a corporation is not liable for the debts and obligations of its predecessor entities. The undisputed facts establish that Enterprises did not expressly or implicitly assume Bruegger's obligations under the abandoned lease, the asset purchase agreement ("the Agreement") between Enterprises and Bruegger's did not constitute a

*de facto* merger, Enterprises is not a "mere continuation" of Bruegger's, and the plaintiff has alleged no specific facts or circumstances supporting its conclusory allegations that the Agreement was fraudulent. Accordingly, Enterprises is entitled to summary judgment as a matter of law on all counts of the plaintiff's complaint.

**I.     STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, Enterprises contends that the following facts are undisputed:

1.     Bruegger's Bagel Bakeries began operating in 1983. The company was founded by Nordahl Brue and Michael Dressell. Affidavit of David T. Austin, Exhibit 1, ¶ 2.

2.     In the summer of 1996, the stock of Bruegger's Corporation ("Bruegger's") was sold to Quality Dining, Inc. ("QDI"). *Id.* ¶ 3.

3.     QDI owned and operated Bruegger's from that date through October 1997. *Id.* ¶ 4.

4.     Bruegger's entered into the subject lease ("the Lease Agreement") on July 23, 1993. *Id.* ¶ 5.

5.     Bruegger's abandoned the subject premises on October 31, 1997. *Id.* ¶ 6.

6.     In October 1997, Mr. Brue and Mr. Dressell reacquired all of the stock of Bruegger's. At that time, Bruegger's had secured indebtedness of approximately $10 million, and unsecured debt of $10 million. Operating affiliates of Bruegger's also had secured indebtedness of approximately $50 million. *Id.* ¶ 7.

7.     Mr. Brue and Mr. Dressell were the sole shareholders of Bruegger's from October 1997 through August 6, 2003. Because of a decline in royalty revenue during this period, Bruegger's became unable to timely service its secured indebtedness. *Id.* ¶ 8.

8. In order to satisfy the demands of Bruegger's lenders, the company agreed that it would market itself and use sales proceeds to pay Bruegger's lenders. *Id.* ¶ 9.

9. Bruegger's was marketed through Houlihan Lokey Howard & Zukin, an investment banking firm with offices in New York. *Id.* ¶ 10.

10. Bruegger's received multiple expressions of interest and several offers for its assets, including an offer from Sun Capital Partners, Inc. or its affiliates (collectively, "Sun Capital"). *Id.* ¶ 11.

11. Bruegger's lender approved the Sun Capital offer and requested that Bruegger's accept that offer, but before Bruegger's did so, the lender sold all of Bruegger's debt to Sun Capital. *Id.* ¶ 12.

12. After Sun Capital acquired Bruegger's debt, Bruegger's agreed to sell its assets to an affiliate of Sun Capital in lieu of foreclosure. The sale price was the same price that had been offered by Sun Capital prior to the time Sun Capital acquired Bruegger's debt. *Id.* ¶ 13.

13. On August 6, 2003, Sun Capital acquired all of the assets of Bruegger's for $5,000,000, plus the assumption of certain obligations specified in the Asset Purchase Agreement attached hereto as Exhibit 2, through an entity called "Bagel Acquisition Corporation." Bagel Acquisition Corporation assigned all of its rights and obligations under the Asset Purchase Agreement to Enterprises. The full amount of the purchase price was applied to the secured indebtedness of Bruegger's, leaving a substantial deficiency. *Id.* ¶ 14.

14. There was no binding settlement agreement in place between Brueggers' and the plaintiff as of August 6, 2003. At the time of the transaction, Bruegger's had not occupied the

premises since October 31, 1997, and had not had any contact with the plaintiff since 2000.  *Id.* ¶ 15.

15.     Enterprises never occupied the premises at Eleven Maple Street in Danvers, Massachusetts or received any other benefits under the Lease Agreement.  *Id.* ¶ 16.

16.     Neither Bruegger's, Mr. Brue, nor Mr. Dressell, acquired any stock or any other interest Sun Capital, Bagel Acquisition Corp., Enterprises, or any of their affiliates as a result of this transaction.  *Id.* ¶ 17.

17.     Neither Mr. Brue nor Mr. Dressell own, or ever owned, any stock in Sun Capital, Bagel Acquisition Corp., Enterprises, or any of their affiliates.  *Id.* ¶ 18.

18.     Neither Mr. Brue nor Mr. Dressell has, or ever had, any employment, consulting, or personal contractual relationship with Bagel Acquisition Corp. or Enterprises.  Enterprises leases space in a building owned by an entity controlled by Mr. Brue and Mr. Dressell in Burlington, Vermont, for which they pay rent on terms comparable to or better than other tenants in the building.  Enterprises leases retail space at market rate in a building owned by an entity controlled by Mr. Brue.  *Id.* ¶ 19.

19.     Mr. Brue and Mr. Dressell have a controlling interest in an entity that provides goods to Enterprises at market rates.  Enterprises has analyzed the market for these goods consistent with its normal practice, and selected the goods provided by Mr. Brue and Mr. Dressell's entity as a result of that arms-length analysis.  *Id.* ¶ 20.

20.     The former shareholders of Bruegger's have no other relationship with Sun Capital, Bagel Acquisition Corp., Enterprises, or any of their affiliates*.  Id.* ¶ 21.

21. As of August 6, 2003, David Austin was the President and Chief Executive Officer of Bruegger's. Mr. Austin currently serves as President of Enterprises. The CEO of Enterprises is James Greco. Mr. Greco was never employed by Bruegger's. *Id.* ¶ 22.

22. As of August 6, 2003, Steven Schonberg was Bruegger's Vice President, Chief Financial Officer, Treasurer, and Secretary. Mr. Schonberg worked for Enterprises for approximately a month, but is no longer employed by Enterprises. Because of his extensive experience with Bruegger's, Mr. Schonberg provides consulting services to Bruegger's. *Id.* ¶ 23.

23. The board of directors of Enterprises is made up entirely of persons designated by Sun Capital. Neither Mr. Brue, Mr. Dressell, Mr. Austin, nor Mr. Schonberg sit, or have ever sat, on Enterprises' board of directors. *Id.* ¶ 24.

24. No current or former member of Brueggers' board of directors is a member of Enterprises' board of directors. *Id.* ¶ 25.

## II. ARGUMENT

### A. Standard Of Review.

Summary judgment is appropriate when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36-37 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56(c)), *cert. denied,* 516 U.S. 1113 (1996). "[A]n absence of evidence on a critical issue weighs against the party – be it the movant or the nonmovant – who would bear the burden of proof on that issue at trial." *Perez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1st Cir. 2001). Affidavits submitted in opposition to summary judgment motions must be based upon the

affiant's personal knowledge of facts "as opposed to conclusions, assumptions, or surmise," id. at 316, and "[t]he mustered evidence must be significantly probative of specific facts." Id. at 317. Summary judgment must be granted where "the nonmovant has the burden of proof on a critical issue and the evidence that she proffers in opposition to summary judgment is so vague that she could not prevail at trial…." Id. at 318.

    **B.    Enterprises Is Entitled to Summary Judgment Because it is Not A Party to the Lease Between the Plaintiff and Bruegger's.**

It is axiomatic that a party is not bound by a contract to which they did not agree. Enterprises did not sign the Lease Agreement. The Lease Agreement is entitled "BRUEGGER'S CORPORATION LEASE". Exhibit 3. The tenant identified in the lease was "Bruegger's Corporation". Exhibit 3, p. ii. The Lease Agreement does not mention Enterprises, and was not signed by Enterprises. See Exhibit 3. Accordingly, there is no genuine issue of material fact that Enterprises is not a party to the lease agreement, and, as a matter of law, cannot be found liable to the plaintiff on that basis.

    **C.    Enterprises is Not Liable for Bruegger's Obligations under the Lease Agreement.**

"Under generally accepted corporate law principles, the purchaser of the assets of another corporation does not assume the debts and liabilities of the transferor." _Devine & Devine Food Brokers, Inc. v. Wampler Foods, Inc._, 313 F.3d 616, 618 (1st Cir. 2002); _Dayton v. Peck, Stow & Wilcox Co._, 739 F.2d 690, 692 (1st Cir. 1984) ("[t]he general rule in the majority of American jurisdictions, including Massachusetts, is that a company which purchases the assets of another company is not liable for the debts and liabilities of the transferor") (quotation omitted).

> The traditional rule is subject to four generally recognized exceptions: (1) the purchasing corporation expressly or impliedly agrees to assume the selling corporation's liabilities;

6

> (2) the transaction is a merger of the two entities; (3) the purchaser is a mere continuation of the seller corporation; and (4) the transaction is a fraudulent attempt to evade the seller's liabilities.

*Devine & Devine*, 313 F.3d at 618 (citation omitted).  The Plaintiff bears the burden of alleging facts that bring Enterprises with one of these exceptions.  *Dayton*, 739 F.2d at 692.  If the Plaintiff fails to do so, summary judgment is appropriate.  *Id.*

    **1.    Enterprises did not Expressly Assume Bruegger's Liability on the Lease Agreement.**

The interpretation of language in a written contract is a question of law.  *Fenoglio v. Augat, Inc.*, 50 F. Supp. 2d 46, 51 (D. Mass. 1999).  The Court must put itself "in the place of the parties to the instrument and give its words their plain and ordinary meaning in the light of the circumstances and in view of the subject matter." *McQuade v. Springfield Safe Deposit & Trust Co.,* 333 Mass. 229, 233, 129 N.E.2d 923, 926 (1955).

Under the Agreement, Enterprises acquired "all rights, titles and interests of [Bruegger's] in and to properties, rights, and assets of every kind and nature owned and leased (where th[e] Agreement provide[d] for the assumption of such lease) by [Bruegger's] … as of the Closing Date … but excluding Excluded Assets…." Exhibit 2, § 2.1(a), p. 7.  Under this provision, Enterprises only assumed leases to the extent that the Agreement expressly provided for such assumption.  In addition, Enterprises did not acquire any of Bruegger's assets excluded under the terms of the Agreement.  Exhibit 2, §§ 2.3 and 2.4, pp. 9-10.  Accordingly, unless Enterprises expressly assumed the Lease Agreement under the terms of the Agreement, it cannot be held liable for Bruegger's obligations under the Lease Agreement.

The Agreement expressly provides that Enterprises acquired, "to the extent assignable, all of Seller's rights existing under the Assumed Facility Leases including, without limitation, all

7

rights to security deposits held pursuant thereto…." Exhibit 2, § 2.1(a)(ix), p. 7.  "Assumed Facility Leases" is defined as "all of the Facility leases identified in <u>Schedule 2.1(a)(x)</u> attached hereto…." Exhibit 2, § 1.1, p. 1 (underlining in text).  Schedule 2.1(a)(x) lists approximately seventy-nine (79) leases assumed by Enterprises, *see* Exhibit 4, but does not list the Lease Agreement between Bruegger's and the plaintiff.  Moreover the term "Facility" expressly includes only "the premises at which [Bruegger's] operates." Exhibit 2, § 1.1, p. 3.[1]  The present-tense term "operates" means that the definition of "Facility" applies only to premises being operated by Enterprises as of the date of the Agreement.  It is undisputed that Bruegger's was not operating on the subject premises as of August 6, 2003.  *See* Affidavit of David T. Austin, ¶ 6, Exhibit 1.  Because the subject premises was not a "Facility" under the terms of the Agreement, the Lease Agreement was not an "Assumed Facility Lease."  Accordingly, Enterprises did not expressly assume Bruegger's rights and obligations under the Lease Agreement.

Under the Agreement, Enterprises agreed to assume certain liabilities of Bruegger's, which are referred to as "Assumed Obligations." Exhibit 2, § 2.2, p. 9.  The Assumed Obligations include "any payments up to, but in no case exceeding, $35,000, in connection with the settlement of claims under any Contracts for the rental or leasing of the Facilities not assumed by Purchaser hereunder and pursuant to binding settlement agreements…." Exhibit 2, § 2.2(i), p. 9.  On its face, this provision qualifies the term "Assumed Obligations" in two

---

[1] The terms "Facility" and "Facilities" are interchangeable. Exhibit 2, § 1.2(a), p. 6 ("[u[nless the context otherwise clearly indicates, in this Agreement: (a) the singular includes the plural….").

important respects:  the Contract must be for the rental or lease of "Facilities", and the obligation must exist pursuant to a "binding settlement agreement."

As discussed in the preceding section, the definition of "Facilities" is expressly limited to premises operated by Bruegger's as of the date of the Agreement – August 6, 2003.  There is no dispute that Bruegger's was not operating on the subject premises as of August 6, 2003.  *See* Affidavit of David T. Austin, ¶ 6, Exhibit 1.  Moreover, there was no "binding settlement agreement" in place between Bruegger's and plaintiff as of August 6, 2003.  *Id.* ¶ 15.  Under the plain terms of the Agreement, the Lease Agreement was not among the "Assumed Obligations" accepted by Enterprises under the Agreement.  Because Enterprises did not assume any of Bruegger's obligations unless it specifically agreed to do so, Exhibit 2, § 2.4, Enterprises did not assume Bruegger's obligations under the Lease Agreement.  Accordingly, Enterprises is entitled to summary judgment as a matter of law.

      **2.**      **Enterprises did not Impliedly Agree to Assume Bruegger's Liability on the Lease Agreement.**

To succeed on such a claim, the Plaintiff must demonstrate that Enterprises manifested its intent to assume the contract.  *See Devine & Devine Food Brokers, Inc. v. Wampler Foods, Inc.*, 313 F.3d 616, 618 (1st Cir. 2002) (applying Virginia law).  "A prima facie case of implied assumption of contract is established where a corporation accepted the benefits of a contract with knowledge of its terms."  *Id.*

In *Devine & Devine*, Devine and Cuddy Farms, Inc. entered into a food brokerage contract in 1987 that provided a substantial severance payment to Devine in the event that Cuddy terminated the contract.  In 1994, Wampler Foods, Inc. acquired a substantial portion of Cuddy's food service business.  The 1994 asset purchase agreement specified the obligations of

9

Cuddy that Wampler agreed to assume. The Cuddy/Devine agreement was not among those obligations. Wampler offered Devine a new brokerage agreement that would supersede the Cuddy/Devine agreement. Devine refused to accept this provision and the parties reached an impasse on that issue. In early 1995, Wampler expanded Cuddy's area of coverage, and reiterated that this agreement regarding the expanded territory superceded prior agreements between Cuddy and Devine. In May 1998, Wampler terminated its relationship with Devine. Devine filed suit seeking its severance payment under the Cuddy/Devine contract. The District Court (Woodlock, J.) granted summary judgment in favor of Wampler. The First Circuit Court of Appeals affirmed.

The First Circuit held that Wampler did not implicitly assume all of Cuddy's obligations under the Cuddy/Devine agreement. *Id.* at 618-19. Specifically, the Court held that while Wampler had adopted many of the 1987 agreement's terms, Devine "point[ed] to no evidence suggesting that, comcomitant with Wampler's designation of Devine as its broker, Wampler acquiesced in all of the provisions of the Cuddy agreement." *Id.* at 619.

*Devine* clearly holds that an implied agreement to assume all of a corporate predecessor's obligations under an agreement does not arise even though the successor corporation adopts some of the predecessor's rights and obligations under the same agreement. This case is even more compelling on its facts because Enterprises never occupied the subject premises or received any other benefits under the Lease Agreement. Affidavit of David T. Austin, ¶ 16, Exhibit 1. In the absence of any benefit to Enterprises, Enterprises cannot be found to have implicitly agreed to accept Bruegger's obligations under the lease. Accordingly, Enterprises is entitled to summary judgment as a matter of law.

      **3.**     **Enterprises is Entitled to Summary Judgment Because the Asset Purchase Agreement Does not Constitute a *De Facto* Merger Between Enterprises and Bruegger's.**

Whether a given transaction constitutes a *de facto* merger depends primarily upon whether there is continuity of shareholders and management between the predecessor and successor entities. <u>Dayton v. Peck, Stow & Wilcox Co.</u>, 739 F.2d 690, 693 (1st Cir. 1984). At least some degree of ownership continuity is a key requirement for a finding of *de facto* merger. *See* <u>John T. Callahan & Sons, Inc. v. Dykeman Elec. Co., Inc.</u>, 266 F. Supp. 2d 208, 228-29 (D. Mass. 2003) (Rhode Island law).

Continuity of shareholders is found where the successor corporation exchanges its stock for the assets of the predecessor "so that the shareholders of the seller corporation become a constituent part of the purchaser corporation." <u>Dayton</u>, 739 F.2d at 693. If, on the other hand, the successor acquires the predecessor's assets for cash, such that "the relationship of the shareholders to the respective corporations [remains] unchanged," the transaction does not constitute a *de facto* merger. <u>Id.</u>

In this case, it is undisputed that Enterprises acquired Bruegger's assets for cash and the assumption of certain liabilities. Affidavit of David T. Austin, ¶ 14, Exhibit 1; *see* Exhibit 2, § 3.1, p. 10. Bruegger's sole shareholders did not acquire, and have never owned, any stock in Enterprises or any of its affiliated entities. Affidavit of David T. Austin, ¶¶ 17-18, Exhibit 1. Accordingly, there is no continuity of shareholders between Bruegger's and Enterprises.

Additionally, the plaintiff cannot establish "wholesale continuity of management" between Bruegger's and Enterprises. *See* <u>Devine & Devine</u>, 313 F.3d at 619 (mere fact that

11

successor retained some of the predecessor's managers was insufficient to defeat summary judgment in favor of successor). The only statutory officer of Bruegger's currently employed by Enterprises is David Austin. Affidavit of David T. Austin, ¶ 22, Exhibit 1. Steven Schonberg, one of Bruegger's senior officers, worked for Enterprises for a brief period of time, but no longer does so except as a consultant. Affidavit of David T. Austin, ¶ 23, Exhibit 1. Neither Mr. Brue nor Mr. Dressler work, or ever worked, for Enterprises. Affidavit of David T. Austin, ¶ 19, Exhibit 1. Under these facts, there is insufficient basis for finding "wholesale continuity of management" between Bruegger's and Enterprises. *Devine & Devine*, 313 F.3d at 619. Accordingly, Enterprises is entitled to summary judgment as a matter of law.

    **4.**    **Enterprises is Entitled to Summary Judgment Because Enterprises is not a "Mere Continuation" of Bruegger's.**

In practice, there appears to be no significant distinction between the *de facto* merger and mere continuation theories, and the courts use them interchangeably. *National Gypsum Co. v. Continental Brands Corp.*, 895 F. Supp. 328, 336 (D. Mass. 1995). The "mere continuation" theory is most often applied when the owners of a selling entity set up the buying entity in order to continue the business under a new form. *Id.* Both concepts depend upon "a common identity of the officers, directors and stockholders in the selling and purchasing corporations." *See Dayton*, 739 F.2d at 693 (quotation omitted).

As set forth above, there is no "common identity" of officers, directors and shareholders between Bruegger's and Enterprises. Enterprises acquired Bruegger's for cash and the assumption of certain debts. *See* Affidavit of David T. Austin, ¶ 14, Exhibit 1, *see* Exhibit 2, § 3.1, p. 10. Bruegger's shareholders acquired no stock in Enterprises or its affiliates, and have never owned any. Affidavit of David T. Austin, ¶¶ 17-18, Exhibit 1. There is currently only one

12

common statutory officer between Bruegger's and Enterprises.  Affidavit of David T. Austin, ¶ 22, Exhibit 1.  No Bruegger's directors serve, or have ever served, on the Enterprises board of directors.  Affidavit of David T. Austin, ¶¶ 24-25, Exhibit 1.  Accordingly, Enterprises is indisputably not a "mere continuation" of Bruegger's, and Enterprises is entitled to summary judgment as a matter of law.

> 5.  **Count III should be Dismissed, or Enterprises should be granted Summary Judgment, because Plaintiff has not pled any Specific Facts or Circumstances Supporting its Conclusory Allegations of Fraud.**

The plaintiff must allege with particularity the circumstances constituting fraud.  Fed. R. Civ. Proc. 9(b).  "Rule 9(b) requires that a plaintiff's averments of fraud specify the time, place, and content of the alleged false or fraudulent representations."  United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir.), cert. denied, 125 S. Ct. 59 (2004).  Allegations of fraud may be made on information and belief, but must still "set forth the facts on which the belief is founded."  Id. (quoting New England Data Services, Inc. v. Becher, 829 F.2d 286, 288 (1st Cir. 1987)).

The plaintiff's conclusory allegations of unfair or deceptive acts do not satisfy Rule 9(b).  The plaintiffs have alleged only that Bruegger's "wrongfully" or "deceptively" conveyed assets to Enterprises.  See Plaintiff's Verified Complaint, ¶¶ 18-19.  The plaintiff does not specify any alleged circumstances that make the Agreement fraudulent, wrongful, or deceptive, and does not even allege such facts on information and belief.  A court should reject claims made in a complaint that are "bald assertions" or "unsupportable conclusions."  Karvelas, 360 F.3d at 224.

Even if the vague and conclusory allegations of the Plaintiff's Verified Complaint satisfied Rule 9(b), which Enterprises does not concede, they do not satisfy Fed. R. Civ. Proc.

56(e).  See *Perez*, 247 F.3d at 315 (affidavits made upon information and belief do not comply with Rule 56(e)).  The plaintiff bears the burden of proving fraud, *see Dayton*, 739 F.2d at 692, and summary judgment must be granted if the plaintiff does not muster significant probative evidence of specific facts.  See *Perez*, 247 F.3d at 317.

The Plaintiff has not alleged a single specific fact based upon personal knowledge, as opposed to conclusions, assumptions or surmise, *see id.* at 316, to support its allegations of unfair, deceptive or wrongful acts.  The Plaintiff's allegations do not satisfy Rule 56(e).  Accordingly, Enterprises is entitled to summary judgment as a matter of law.

### III.  CONCLUSION

It is undisputed that Enterprises did not expressly or implicitly assume Bruegger's obligations under the Lease Agreement.  Further, there is no genuine issue of material fact that the Agreement does not constitute a de facto merger, and that Enterprises is not a "mere continuation" of Bruegger's.  Finally, the plaintiff has alleged no specific facts supporting its conclusory claims of fraud.  Accordingly, Enterprises is entitled to summary judgment as a matter of law.

                                                Respectfully submitted,

                                                BRUEGGER'S ENTERPRISES, INC.
                                                By its Attorneys

Dated:  September 15, 2005            By: /s/ Robert B. Smith
                                                  Robert B. Smith, BBO# 546580
                                                  Nelson Kinder Mosseau & Saturley, P.C.
                                                  45 Milk Street, 7th floor
                                                  Boston, MA  02109
                                                  Phone:  (617) 778-7500
                                                  Fax:     (617) 778-7501

## CERTIFICATE OF SERVICE

    I, Robert B. Smith, an attorney, hereby certify that I caused true and correct copies of the foregoing Memorandum of Law in Support of Defendant Bruegger's Enterprises, Inc.'s Motion to Dismiss to be served upon the parties listed below via hand delivery this 15th day of September 2005.

Stephen P. Rahavy, Esq.
Law Offices of Stephen P. Rahavy, Esq.
Two Oliver Street
Boston, MA  02109-4900
Attorney for Plaintiff

Christopher J. Panos
Craig and Macauley
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA  02210
Attorney for Bruegger's Corporation

                                                  /s/ Robert B. Smith
                                                  Robert B. Smith