EXHIBIT 3



EXHIBIT

"A"

# BRUEGGER'S CORPORATION LEASE

### BETWEEN

## ONE MAPLE STREET ASSOCIATES

### AS LANDLORD

### AND

## BRUEGGER'S CORPORATION

## (d/b/a BRUEGGER'S FRESH BAGEL BAKERY)

### AS TENANT

LOCATION:   Eleven Maple Street

Danvers, MA

DATED:      July 23, 1993

# BRUEGGER'S CORPORATION LEASE
## Summary Page

**Landlord:**      One Maple Street Associates
Address for Rent:
Capstone Management
1 Davol Square
Providence, RI  02903
Notice Address:
c/o William C. Kaplan
P.O. Box 262
Cambridge, MA  02140-0262
with copies to:
Stephen Lewinstein
P.O. Box 2431
Boston, MA  02208

**Tenant:**      Bruegger's Corporation
Notice Address:
Attn: Development Department
159 Bank Street
P.O. Box 374
Burlington, VT  05402-0374
with copies to:
Sheehey, Brue, Gray & Furlong
119 South Winooski Avenue
P.O. Box 66
Burlington, VT  05402-0066

**Tenant's Trade Name:**  Bruegger's Fresh Bagel Bakery, or variations thereof.

**Demised Premises:**  Address:_11 Maple Street____
City:____Danvers_____  State:__MA___  Zip:_01923_

Square Footage:_2,300__

**Term:**      Initial:_Ten (10) years___
Options:_One (1) period of five (5) years_
Commencement date:_to be set forth in Exhibit B when determined_
Build Out Time:_90 Days___

**Minimum Rent:**      $18.00____ per square foot
$3,450.00_ per month
Annual Minimum Rent to increase 3% each year

**Additional Rent:**   Prorata share of triple net charges, and percentage rent

Bruegger's Corporation Lease
Page ii

# BRUEGGER'S CORPORATION LEASE
## INDEX

1. Description of Premises . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3. Quiet Enjoyment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4. Minimum Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5. Additional Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6. Percentage Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7. Use Of Premises . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

8. Utilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

9. Repairs and Maintenance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

10. Glass . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11. Surrender of Premises . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12. Damage or Destruction of Premises . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

13. Non-Liability of Landlord for Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

14. Fire Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15. Liability Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

16. Mutual Waiver of Subrogation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

17. Assignment, Sublease, or License . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18. Improvements or Additions by Tenant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

19. Restrictions Against Mechanic's Liens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

20. Signs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

21. Condemnation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

22. Holding Over . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# BRUEGGER'S CORPORATION LEASE
## INDEX

23. Notices, Approvals, and Consents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

24. Forfeiture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

25. Licenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

26. Landlord To Have Access . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

27. Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28. Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

29. Headings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

30. Renewal Options . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

31. Attorney Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

32. Force Majeure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

33. Recording . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

34. Competition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

35. Hazardous Waste . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

36. Collateral Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

37. Subordination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

38. Non-Disturbance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

39. Brokers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

40. When Lease Becomes Binding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

EXHIBIT A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        LANDLORD'S WORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

EXHIBIT B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        LEASE COMMENCEMENT AGREEMENT . . . . . . . . . . . . . . . . . . . . . 21

EXHIBIT C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        ASSIGNMENT OF INTEREST IN LEASE AS COLLATERAL . . . . . . . . . . . 22

# BRUEGGER'S CORPORATION LEASE

This agreement of lease ("Lease") made and entered into this 23rd day of July, 1993, by and between ONE MAPLE STREET ASSOCIATES, hereinafter referred to as "Landlord," and BRUEGGER'S CORPORATION, doing business as BRUEGGER'S FRESH BAGEL BAKERY, a corporation, organized under the laws of the state of Delaware and having its usual place of business at 159 Bank Street, Burlington, Vermont 05401, hereinafter referred to as "Tenant." In consideration of the mutual covenants herein contained, the parties agree as follows:

## 1. Description of Premises

Landlord leases to Tenant and Tenant leases from Landlord the premises located at 11 Maple Street, Danvers, MA which contains approximately 2,300 square feet (hereinafter referred to as the "Premises"). Within ten (10) days of Lease execution the Landlord shall provide the Tenant with an architect's certificate verifying the actual footage of the Premises according to BOMA standards. The Premises shall be prepared in accordance with Exhibit A which is attached hereto and incorporated herein by reference. Notwithstanding any provision of this Lease to the contrary, at the time possession is delivered to Tenant, the Premises shall comply with all laws, rules, regulations, orders, ordinances, and requirements of all federal, state, and municipal government departments, commissions, boards, and officers, and all orders, rules, and regulations of the National Board of Fire Underwriters, the local Board of Fire Underwriters, or any other agency or agencies, body or bodies exercising similar functions that may be applicable to the Premises, including but not limited to, compliance with all building, fire and electrical codes required for Tenant's use of the Premises as set forth in Section 7 of this Lease.

## 2. Term

The term of this Lease is ten (10) years beginning upon Tenant's acceptance of the Premises by executing Exhibit B herein, which day shall be defined as the "Lease Commencement Date." "Lease Year" shall be defined as the period beginning on the Lease Commencement Date and ending on the last Tuesday in December. After the first Lease Year, Lease Year shall mean the 52-53 week period ending on the last Tuesday in December, except in the last Lease Year which shall end on the date of termination of this Lease.

The parties herein agree that, subject to the execution of this Lease, Tenant shall be entitled to the use and possession of the Premises for the purposes of renovation and remodeling.

If the Premises are not ready for possession by Tenant within one hundred twenty (120) days of the final execution of this Lease agreement, Tenant shall have the option of terminating this Lease immediately by giving Landlord written notice.

This Lease shall commence upon the latter of: (1) the receipt of all necessary permits and approvals for the construction of Tenant's leasehold improvements; (2) Landlord's approval of Tenant's plans and specifications for leasehold improvements; or (3) Landlord's delivery of the Premises to Tenant. Tenant will provide to Landlord within forty-five (45) days of Lease

execution a set of final plans and specifications for Landlord's approval. Within five (5) business days of Tenant's receipt of Landlord's approval of the final plans and specifications, Tenant will submit such final plans to the municipal authority to seek appropriate permits. Tenant will diligently pursue such permits and if Tenant does not receive the necessary permits within seven (7) calendar weeks of such submittal, either Landlord or Tenant may cancel the Lease without further obligation to either party.

## 3. Quiet Enjoyment

Landlord covenants, warrants and represents that upon commencement of the Lease term, Landlord has full right and power, and lawful authority to enter into, execute and perform this Lease for the full term granted herein and for all extensions provided herein, free and clear of all occupancies and tenancies, and to grant the estate demised herein; and that Tenant, upon the payment of the rent herein reserved and performance of the covenants and agreements hereof, shall peaceable and quietly have, hold and enjoy the Premises and all rights, easements, covenants, and privileges belonging or in any way appertaining thereto, during the term of this Lease. Landlord further represents and warrants to Tenant that at all times, Tenant shall have reasonable unobstructed means of ingress and egress to the Premises. If Landlord shall be in default under this Section, Tenant, in addition to any and all remedies it may have in law and/or equity, may terminate this Lease upon written notice to Landlord, except that Landlord shall have ten (10) business days upon receipt of Tenant's written notice to cure any such default, provided Tenant shall have the right to withhold rent based on the extent of the interference and disruption of Tenant's operation of business, and loss of business attributable to such interference.

## 4. Minimum Rent

During the term of this Lease, Tenant agrees to pay to Landlord a minimum rent according to the following schedule:

> During the first (1st) year of the original term of this Lease the lesser of (i) Forty-One Thousand Four Hundred Dollars ($41,400.00); or (ii) a sum equal to Eighteen Dollars ($18.00) per square foot per year.

> During the second (2nd) through the tenth (10th) year of the original term of this Lease said first (1st) year minimum rent shall be increased by three percent (3%).

> During the first (1st) year of the option term of this Lease the lesser of (i) Sixty-One Thousand Five Hundred and Twenty-Five Dollars ($61,525.00); or (ii) a sum equal to Twenty-Six Dollars and Seventy-Five Cents ($26.75) per square foot per year.

> During the second (2nd) through the fifth (5th) year of the option term of this Lease, the first (1st) option year minimum rent shall be increased by three percent (3%).

Tenant shall pay minimum rent to Landlord in equal monthly installments of 1/12th, which minimum rent shall be paid monthly in advance on the first (1st) day of each and every calendar month during the term hereof. This Lease and Tenant's obligation to pay minimum and additional rent hereunder shall commence ninety (90) days from the earlier of the Lease Commencement Date, or upon store opening, hereinafter referred to as the "Rent Commencement Date".

Tenant shall not be responsible for paying minimum rent until Landlord and Tenant have agreed, in writing, that the Landlord has constructed or prepared the Premises in accordance with the Landlord's obligations hereunder.

## 5. Additional Rent

In addition to minimum rent, Tenant agrees, commencing on the Rent Commencement Date, to pay to Landlord, at the times hereinafter set forth, the following additional charges as additional rent:

A. Taxes. Tenant covenants and agrees to pay its proportionate share of the real estate taxes, excluding past due amounts, if any, assessed by the Town of Danvers against the building of which the Premises are a part, hereinafter referred to as the "Building". Tenant's proportionate share shall be computed by multiplying the whole of such costs and expenses by a fraction, the numerator of which is the number of square feet of gross floor area in the Premises, and the denominator of which is the total leasable square footage in the first floor of the Building. Adjustments shall be made in said monthly payments whenever a change in the taxes occurs and appropriate adjustments shall be made to Tenant's account to reflect said change and the effective date thereof. Landlord shall promptly notify Tenant of any such adjustment and shall provide copies of the tax bill together with the calculations of Tenant's proportionate share. In every case said taxes shall be adjusted to take into account any abatement or refund thereof allocable to Landlord. Landlord agrees to pay, before the same become delinquent, all real estate taxes. In no event may Landlord collect more than one hundred percent (100%) of taxes owed on the Building.

In the event any taxes are lawfully levied or assessed against the Tenant's personal property, including but not limited to signs either on or within the Premises, then Tenant shall pay the full amount of such taxes. Nothing contained herein shall be construed so as to require Tenant to pay or be liable for any gift, inheritance, estate, franchise, income profit capital, or similar tax, or any other tax in lieu of any of the foregoing, imposed on Landlord or the successors or assigns of Landlord, unless such tax shall be imposed or levied upon or with respect to rents payable to Landlord hereunder in lieu of real estate taxes upon the Premises.

B. Common Area Charges. The Common Areas of the Building ("Common Areas") shall be the parking areas, driveways, walks, entrances, exits, common hallways and stairways of the Building. Landlord covenants and agrees to keep and maintain the Common Areas within the Building in good order, condition, replacement and repair, and in a clean sanitary and safe condition in accordance with the laws of the city, county and state in which the Building is

Bruegger's Corporation Lease
Page 3

located, and in accordance with all direction, rules and regulations of any governmental agencies having jurisdiction over the Premises.

All costs and expenses paid by Landlord (including, as an expense, amounts determined as reasonable and appropriate for the replacement of equipment not real estate in nature used incident thereto) in removing snow, ice and refuse, cleaning, providing water, and other utilities for operating, managing, equipping, policing, lighting, repairing, replacing, maintaining, landscaping and gardening the Common Areas of the Building (including the maintenance of utilities, conduits, fixtures and equipment located therein) shall be determined, and Tenant shall share in paying the cost thereof, all as hereinafter provided. Tenant's proportionate share shall be computed by multiplying the whole of such costs and expenses by a fraction, the numerator of which is the number of square feet of gross floor area in the Premises, and the denominator of which is the total leasable square footage in the first floor of the Building.

Common Area Charges shall be computed in accordance with the restrictions set forth below and shall exclude the following:

a. Leasing commissions, attorneys' fees, costs, disbursements and other expenses incurred in connection with negotiations or disputes with tenants or leasing, renovating or improving space for tenants or other occupants or prospective tenants or occupants of the Building.

b. Costs including permits, licenses and inspection fees incurred in renovating or otherwise improving or decorating, painting or redecorating vacant space or space for tenants or other occupants.

c. Landlord's cost of any service sold to other tenants or other occupants for which Landlord is entitled to be reimbursed as an additional charge or rental over and above the basic rent and escalations payable under the lease with that tenant or other occupant.

d. Costs incurred by Landlord for alterations or additions that are considered capital improvements and replacements under generally accepted accounting principles.

e. Any depreciation and amortization of the Building.

f. Costs of a capital nature, including, but not limited to capital improvements, capital repairs, capital equipment and capital tools as determined in accordance with generally accepted accounting principles.

g. Expenses in connection with services or other benefits of a type that are not provided Tenant but which are provided another tenant or occupant.

h. Costs incurred due to violation caused by Landlord of any of the terms and conditions of this Lease or any other lease relating to the Building.

i. Overhead and profit increments paid to subsidiaries or affiliates of Landlord for management or other services of or to the Building or for supplies or other materials to the extent that the cost of the services, supplies or materials exceed the cost that would have been paid had the services, supplies or materials been provided by unaffiliated parties on a competitive basis.

j. Interest on debt or amortization payments or increases in interest or debt on any mortgages and rental under any ground or underlying lease or changes in deeds of trust or any other debt for borrowed money.

k. Any compensation paid to clerks, attendants or other persons in commercial concessions operated by Landlord to the extent that the cost of the services, supplies or materials exceed the cost that would have been paid had the services, supplies or materials been provided by unaffiliated parties on a competitive basis.

l. Rentals and other related expenses incurred in leasing air conditioning systems, elevators or other equipment ordinarily considered to be of a capital nature, except equipment used in providing janitorial services that is not affixed to the Building.

m. All items and services for which Tenant previously reimbursed Landlord or pays third persons directly.

n. Advertising and promotional expenditures.

o. Repairs and other work occasioned by fire, windstorm or other casualty of an insurable nature to the extent that Landlord is reimbursed and other work paid from insurance or condemnation proceeds.

p. Landlord's costs of electricity and other services that are sold to tenants and for which Landlord is entitled to be reimbursed by tenants as an additional charge or rental over and above the basic rent payable under the lease with such tenant.

q. Any costs, fines or penalties incurred due to violation caused by Landlord of any governmental rule or authority.

r. Any management costs, excepting reasonable and competitive fees of an "outside" management company engaged in the management of the Building, or reasonable wages and benefits of on-site and off-site employees engaged in the management of the Building, limiting such fees, wages or benefits only to amounts directly allocable to services rendered by the employees or "outside" management company for the benefit of the Building.

s. Costs for sculpture, paintings or other objects of art.

t.  Wages, salaries or other compensation paid to an executive employees above the grade of building manager shall be limited to Landlord's general overhead not to exceed ten percent (10%) of any such expense.

u.  The cost of correcting any code violations which were violations prior to the commencement of the term of this Lease.

v.  All costs of any kind or nature of any other retail space.

w.  Costs incurred in connection with upgrading the Building to comply with handicap, life, fire and safety codes in effect at any time.

x.  Costs arising from the presence of hazardous materials or substances in, on, under or about the Building including, without limitation, hazardous substances in the ground water or soil underlying the Building.

y.  Costs arising from Landlord's charitable or political contributions.

z.  Any other expense that under generally accepted accounting principles and practice would not be considered a normal maintenance or operating expense.

Landlord agrees to keep accurate books an records of all Common Area Charges, which shall be open for examination and audit by Tenant, and shall be retained by Landlord for examination by Tenant for a period of three (3) years following the Lease Year to which said books and records apply.  The cost incurred for auditing Landlord's books and records shall be paid by Tenant unless such audit discloses an overcharge to Tenant of more than ten percent (10%). Any overcharge found as a result of an examination shall be credited to Tenant against Tenant's next ensuing installment of minimum rent or in lieu thereof, payable to Tenant in cash upon demand.

Tenant, subtenants and assignees (subject to Landlord's consent, if applicable, as set forth in Section 17 hereof) of Tenant, and employees, agents, contractors and customers of Tenant and of its subtenants or assignees, shall have the right to use in common with and with due regard for the rights of others entitled to use the same, the Common Areas of the Building for all purposes as the Common Areas shall be designated by Landlord.

  C.  Insurance.  The Landlord shall keep the Premises insured at least against such casualties and in such amounts as shall be required by the holder of a mortgage upon the Building of which the Premises is a part.

Tenant agrees to pay to Landlord, as additional rent, the cost to Landlord of keeping the Premises insured as hereinabove provided.

Tenant shall pay to Landlord on the first (1st) day of every month in advance a sum estimated to be equal to 1/12 of the cost to Landlord of keeping the Premises insured, such payments to represent payments on account of Tenant's obligations hereunder.  If for any calendar year of

the term of this Lease, and any extension thereof, Tenant's prorata share of said costs and expenses shall exceed or be less than the aggregate of said payments, an appropriate adjustment shall be made upon the determination of the amount of said costs and expenses for said calendar year and upon Tenant's receipt of a statement setting forth Tenant's prorata share thereof.

## 6. Percentage Rent

In addition to minimum rent and additional rent, Tenant shall pay Period Percentage Rental as set forth below:

| YEAR | PERCENTAGE |
|------|------------|
| 1-5 | 4% |
| 6-10 | 6% |
| OPTION TERM 11-15 | 6% |

"Annual Percentage Rental" means the amount by which the applicable percentage of Tenant's Gross Sales for any Lease Year exceeds the annual minimum rent plus Tenant's proportionate and prorated share of Common Area Charges, insurance, and fifty percent (50%) of taxes ("Minimum Rent and Adjusted Triple Net Charges"). "Period Percentage Rental" shall mean that portion of the Annual Percentage Rental payable each fiscal period after which the applicable percentage of Tenant's aggregate annual Gross Sales for any Lease Year exceeds the annual Minimum Rent and Adjusted Triple Net Charges.

Tenant, per IRC Section 441(f), uses a 52-53 week fiscal year, divided into thirteen (13) four (4) week fiscal periods, except in the "53" week year where the thirteenth (13th) period is five (5) weeks. Tenant's fiscal year ends on the last Tuesday of December. Period Percentage Rental shall be paid on or before the first (1st) day of the third (3rd) month following the period for which it is due, and contemporaneous with such payment Tenant shall furnish to Landlord a written statement setting forth Tenant's Gross Sales for such month or accounting period.

Within sixty (60) days after the end of each Lease Year, Tenant shall furnish to Landlord a written statement, which statement shall be certified by an officer of the Tenant to be complete and correct, setting forth the monthly Minimum Rent and Adjusted Triple Net Charges and Period Percentage Rental actually paid for the applicable Lease Year, the Tenant's Gross Sales, and the Annual Percentage Rental payable for that Lease Year. To the extent that Tenant has not paid Period Percentage Rental in an amount equal to the Annual Percentage Rental due for that Lease Year, it shall promptly pay any such deficiency to Landlord. To the extent that the total actually paid in the applicable Lease Year as monthly Minimum Rent and Adjusted Triple Net Charges and Period Percentage Rental exceeds the annual Minimum Rent and Adjusted Triple Net Charges and Annual Percentage Rental, such excess shall be deducted from the next accruing payment of rent, or otherwise in lieu thereof, shall be promptly refunded to Tenant.

For any Lease Year that is less than 52 weeks, the calculation of annual Minimum Rent and Adjusted Triple Net Charges and Annual Percentage Rental shall be prorated on the basis of the ratio of the number of days in such partial year to three hundred sixty-five (365).

<u>DEFINITION OF GROSS SALES</u>  The phrase "Gross Sales", as used herein, is hereby defined to mean the dollar aggregate of:

> (a)  the sales price of all goods, wares, and merchandise sold, and the charges for all services performed by Tenant in, at, on or from the Premises, whether made for cash, on credit, or otherwise, without reserve or deduction for inability or failure to collect, including, but not limited to, such sales and services (i) where the orders therefore originate at and are accepted by Tenant in the Premises but delivery of performance thereof is made from or at any place other than the Premises, (ii) pursuant to mail, telegraph, telephone or other similar orders received or filled at or from the Premises, (iii) by means of mechanical and other vending devices in the Premises, (iv) as a result of transactions originating upon the Premises, and/or (v) which Tenant in the normal and customary course of its operations would credit or attribute to its business upon the Premises, or any part or parts thereof; and

> (b)  all moneys or other things of value received by Tenant from its operations at, in, on or from the Premises which are neither included in nor excluded from gross sales by the other provisions of this definition.

> (c)  all gross sales made by any sublessee, concessionaire, licensee or otherwise, at, in, on or from the Premises; and such gross sales made by sublessees, concessionaires, licensees or otherwise, shall be included in the reports provided for in this Lease.

Notwithstanding anything contained herein to the contrary, "Gross Sales" shall not include (a) the exchange of merchandise between stores of Tenant and Tenant's affiliates where such exchanges are made solely for the convenient operation of Tenant's business and not for the purpose of consummating a sale which has theretofore been made at, in, on or from the Premises and/or for the purpose of depriving Landlord of the benefit of a sale which otherwise would have been made, at, in, on or from the Premises; or (b) returns to shipper or manufacturers; or (c) sales of fixtures after use thereof in the conduct of Tenant's business in the Premises; or (d) sales to Tenant's employees at a discount; or (e) sales of non-food promotional items; or (f) promotional sales charged to marketing for which no actual revenue is received.  In addition, gross sales shall be reduced by (i) cash or credit card refunds made upon transactions included within gross sales of the Premises, not exceeding the selling price of merchandise returned by the purchaser and accepted by Tenant, and (ii) the amount of any city, county, state or federal sales tax on such sales which is both (a) added to the selling prices, and (b) paid to the taxing authority by Tenant.

## 7. Use Of Premises

The Premises shall be used at times of Tenant's choosing for baking, preparation and retail sale of bagels, bagel sandwiches, soups and salads, cookies and deserts, bagel spreads and cream cheese and such other accompaniments for consumption on or off the Premises as are typically sold from time to time at other BRUEGGER'S FRESH BAGEL BAKERY stores. In addition, Tenant may use the Premises for any other lawful purposes, subject to the consent of Landlord, which consent shall not be unreasonably withheld.

## 8. Utilities

Tenant shall pay for all separately metered utilities furnished to the Premises and consumed by Tenant during the term of this Lease.

## 9. Repairs and Maintenance

Landlord shall, at its expense, maintain the structural exterior of the Building, including the roof, walls, foundations and the structural portion of the Premises, in good condition and repair, except when damaged by Tenant. Landlord warrants that the Premises will be in compliance with all local codes, and that the roof will be free of leaks upon delivery of Premises. Tenant shall, at its expense, maintain in good condition, and replace when necessary, the doors and interior of the Premises, including electrical wiring and fixtures, plumbing, heating, and air conditioning equipment presently in place or added by the Tenant or Landlord.

If Landlord shall fail, refuse or neglect to make repairs in accordance with the terms of this Lease, thirty (30) days following Tenant's written notice setting forth any such repairs; or if Tenant is required to make any repairs by reason of any act, omission or negligence of the Landlord or its employees, agents or invitees, Tenant shall have the right, at its option, to make such repairs on behalf of and for the account of the Landlord and deduct the cost and expense thereof from the next installment(s) of rent due.

In the event that the municipality in which the Premises are located passes an ordinance requiring the removal of hazardous or asbestos related material from the Premises or the Building of which the Premises forms a part, it will be the Landlord's responsibility to remove the offensive material. In the event that the Landlord does not comply, or commence to comply, with the ordinance, or appeal such ordinance, within thirty (30) days after written notice from the Tenant, the Tenant may have the material removed at the cost of the Landlord and deduct the cost from the next monthly rental payment(s).

## 10. Glass

Tenant covenants and agrees to replace the plate glass broken on the Premises during the term of this Lease, except plate glass which is covered under fire insurance and/or extended coverage carried by the Landlord or if such damage is caused by the negligence of the Landlord, its agents, employees or invitees.

Bruegger's Corporation Lease
Page 9

## 11. Surrender of Premises

Tenant shall surrender the Premises at the end of the Lease term, or any extension thereof, in the same condition as when it took possession, allowing for the usual and reasonable wear and tear, or casualty excepted.

## 12. Damage or Destruction of Premises

If the Premises are damaged or partially destroyed by fire, casualty or other cause not resulting from Tenant's neglect or fault, during the term of this Lease or extension, Landlord shall promptly begin to repair them within thirty (30) days after the damage or partial destruction. Rent will be reduced proportionately to the extent to which damage and repair operations interfere with the business conducted on the Premises by Tenant.

If the Building or part thereof shall be damaged or destroyed and such damage or destruction shall materially interfere with the Tenant's use of the Premises as set forth in Section 7 hereof, the minimum rent with respect of the Premises shall abate in proportion to such interference during the period of such interference.

## 13. Non-Liability of Landlord for Damages

Landlord shall not be responsible for liability or damage claims for injury to persons or property for any cause relating to the occupancy of the Premises by Tenant and caused by Tenant's negligence. Tenant shall indemnify Landlord from all liability, loss or other damage claims for obligations resulting from any injuries or losses of this nature, including reasonable attorney's fees and court costs incurred by Landlord in defending any such claims, except when caused by the negligence of the Landlord, his agents, servants, employees or invitees. Landlord shall indemnify Tenant for any loss occurring in the Common Areas, unless caused by the negligence of the Tenant or its agents, servants, employees or invitees.

## 14. Fire Insurance

Tenant is responsible for its own insurance to cover its own contents located in the Premises, and all of the personal property and equipment included in the Premises. Landlord shall not be liable for any damage to the property or person of any of the Tenant's officers, employees, agents, invitees or customers from perils customarily covered by fire and extended coverage insurance, liability insurance, or acts of God. It is agreed that Landlord shall be responsible for fire and extended coverage for the Premises by a responsible insurance company authorized to do business and to provide extended coverage insurance in the state in which the Premises is located. Tenant shall maintain fire insurance and extended coverage on the interior of the Premises in an amount normal and customary in the Tenant's line of business.

## 15. Liability Insurance

Tenant shall procure and maintain in full force, at its expense, during the term of this Lease, and any extension thereof, public liability insurance which shall be adequate to protect against liability for damage claims through public use of, or arising out of, any accident occurring in or around the Premises in a minimum amount of $500,000 for any one accident, and shall maintain or update in an amount normal and customary in the Tenant's line of business as required.

## 16. Mutual Waiver of Subrogation

Landlord and Tenant waive all rights to recover against each other or against any other tenant or occupant of the Building or against the officers, directors, shareholders, partners, joint venturers, employees, agents, customers, invitees, or business visitors of each other or of any other tenant or occupant of the Building for any loss or damage arising from any cause covered by any insurance required to be carried by each of them pursuant to this Section or any other insurance actually carried by each of them. Landlord and Tenant will cause their respective insurers to issue appropriate waiver of subrogation rights endorsements to all policies of insurance carried in connection with the Building or the Premises or the contents of the Building or Premises.

## 17. Assignment, Sublease, or License

Tenant shall not assign this Lease or sublease the Premises, or any right or privilege connected therewith, or allow any other person, except agents, employees, and customers of the Tenant, to occupy the Premises or any part thereof, without first obtaining the written consent of Landlord, ~~which consent shall not be unreasonably delayed or withheld~~. A consent by Landlord shall not be a consent for a subsequent assignment, sublease or occupation by other persons. It shall not be deemed unreasonable for Landlord to refuse consent to any such assignment or sublease if the effect thereof would be to permit Tenant to profit from the occupancy by another tenant of the Premises. In no event will the rent owed by Tenant be less then the base rent owed by Tenant plus any % percentage rent paid by Tenant in the year prior to said sublease.

Notwithstanding the above paragraph, Tenant may, without Landlord's consent, assign this Lease or sublet the Premises (1) to any bona-fide BRUEGGER'S FRESH BAGEL BAKERY operating company, (2) to any corporation, partnership or other entity which is controlled by or under common control with Tenant, or (3) any entity that is formed by Tenant in contemplation or incidental to the listing of the reorganized companies on a recognized securities exchange. Any such assignment or sublease under this Section shall not alter Tenant's responsibility to Landlord under this Lease. Landlord agrees to accept rent from the Tenant, its assignee, or sublessee.

## 18. Improvements or Additions by Tenant

During the term of this Lease, Tenant shall have the right and privilege of remodeling or altering the interior of the Premises, in accordance with the standard BRUEGGER'S FRESH BAGEL BAKERY decor, as it may exist from time to time, including installation or additional partitions

complying with all codes, ordinances, and laws in effect at the time of remodeling.  No alterations or improvements affecting the structural portion of the Building shall be made by Tenant without the written consent of Landlord.  Notwithstanding the foregoing, Tenant shall have the right to perform nonstructural, decorative repairs and modifications to the interior of the Premises, the cost of which shall not exceed $25,000 in any one calendar year without Landlord's written consent; however, should such cost exceed $25,000 in any one calendar year, Landlord's prior written consent shall be required, but Landlord shall not unreasonably withhold or delay such consent.

Tenant shall be permitted, prior to the expiration or sooner termination of this Lease, to remove any additions or improvements made by it, provided, however, that it repairs any damage to the Premises caused by such removal or pays for any damages caused by such removal and further provided, that any such addition or improvement not removed prior to the expiration or sooner termination of this Lease, shall be deemed abandoned and shall, thereupon, become the property of Landlord without compensation to Tenant.

## 19. Restrictions Against Mechanic's Liens

Tenant shall pay, settle or bond all expenses and liabilities arising out of or in any way connected with any and all of Tenant's construction, repairs, alterations, or maintenance of the Premises, and all liens of mechanic's and materialmen, and all liens of a similar character, arising out of or growing out of the construction, repair, alteration, or maintenance of the Premises.

## 20. Signs

Landlord grants permission to the Tenant to erect their standard sign(s), awning(s) and exterior lighting to the extent permitted by law, local codes and/or ordinances.  Said signs shall conform to BRUEGGER'S FRESH BAGEL BAKERY Exterior Signage Criteria as it may exist from time to time.  In addition, Tenant may use its standard window lights and professionally made advertising material.

## 21. Condemnation

If the whole or any part of the Premises that prohibits Tenant from conducting its business as set forth in Section 7 hereof shall be taken by any lawful authority under the power of eminent domain, then this Lease and the term demised, shall thereupon terminate and Tenant shall be liable for rent only up to the date of such termination.

In the event of the partial or complete taking of the improvements, as aforesaid, Tenant shall be entitled to participate in any and all awards for such taking to the extent that any such award includes the loss, if any, sustained by Tenant as a result of the termination of this Lease for the cost of Tenant's improvements, fixtures and moving expenses.

## 22. Holding Over

The failure of Tenant to surrender the Premises upon the termination of the original Lease term or extension, and subsequent holding over by Tenant without consent of the Landlord, shall result in the creation of a tenancy on a month to month basis. During such period as Tenant shall continue to hold the Premises, Tenant shall pay two (2) times the rate of the minimum and percentage rent payable hereunder at the time of such holding over, plus any additional rent, payable on the first day of each month during the month to month tenancy. This provision does not give Tenant any right to hold over. All other terms and conditions of this Lease shall remain in full force during any month to month tenancy hereunder.

## 23. Notices, Approvals, and Consents

Any notice or demand from Landlord to Tenant, or from Tenant to Landlord, shall be mailed by registered or certified mail, addressed as follows:

LANDLORD:        One Maple Street Associates
                Address for Rent:
                        Capstone Management
                        1 Davol Square
                        Providence, RI  02903
                Notice Address:
                        c/o William C. Kaplan
                        P.O. Box 262
                        Cambridge, MA  02140-0262
                with copies to:
                        Stephen Lewinstein
                        P.O. Box 2431
                        Boston, MA  02208

TENANT:          Bruegger's Corporation
                Notice Address:
                        Attn: Development Department
                        159 Bank Street
                        P.O. Box 374
                        Burlington, VT  05402-0374
                with copies to:
                        Sheehey, Brue, Gray & Furlong
                        119 South Winooski Avenue
                        P.O. Box 66
                        Burlington, VT  05402-0066

The customary receipt shall be conclusive evidence of service, and notices shall be effective as of the date of mailing thereof. Landlord agrees to accept rent at the above-referenced address.

## 24. Forfeiture

In the event Tenant's failure to pay any installment of minimum rent, or any other monies agreed by it to be paid under the terms hereof, shall continue for ten (10) days after written notice thereof, or in the event Tenant's failure to keep or perform any of the other terms or conditions of this Lease shall continue for thirty (30) days after written notice thereof, Landlord shall be entitled to bring suit for said rent due and to declare the rights of the Tenant under this Lease terminated, and thereafter, recover possession of said Premises through legal process.

In the event of termination and re-entry by the Landlord in accordance with the foregoing, Tenant shall be obligated to Landlord for any loss of rent and Tenant covenants and agrees to pay all court costs, reasonable attorney's fees and other expenses which may reasonably be incurred by Landlord, in any court proceedings, either in law or in equity, arising out of said default or breach of covenant by Tenant.

## 25. Licenses

This Lease is contingent upon the Tenant's ability to procure upon first application, the necessary approvals, permits, and licenses, from appropriate governmental authorities to use the Premises as permitted under Section 7 hereof. If, after diligent efforts commencing on the execution of this Lease and continuing thereafter, Tenant is unable to receive by the forty-fifth (45th) day from the date of execution of this Lease, the approval of the Town of Danvers for Tenant's intended use (if any such approval is necessary under the Danvers Zoning By-Laws), then Tenant may notify Landlord by the fiftieth (50th) day from the date of execution of this Lease that this Lease is terminated, and in such event this Lease shall terminate pursuant to the provisions hereof. In the event Tenant has not so notified Landlord as provided herein, Tenant's right to terminate shall expire and be of no further force or effect.

## 26. Landlord To Have Access

Landlord hereby expressly reserves the right to enter the Premises and/or any part thereof, at any time in the event of emergency. Furthermore, Landlord may enter the Premises after five (5) days written notice to make inspections and repairs, to exhibit the Premises to prospective tenants, purchasers, or others, and to perform any acts related to safety, protection, preservation, reletting, sale or improvement of the Premises.

## 27. Waiver

No waiver by either of the parties hereto of any provision or breach hereof, shall be deemed a waiver of any other provision or of any subsequent breach by the Tenant or the Landlord of the same or any other provisions. The Landlord's or Tenant's consent to or approval of any act shall not be deemed to render unnecessary the obtaining of the Landlord's or the Tenant's consent to or approval of any subsequent act. No remedy or election hereunder shall be deemed exclusive, but shall, whenever possible, be cumulative with all other remedies at law or in equity.

## 28. Law

This Lease and the performance hereunder shall be governed by the laws of the Commonwealth of Massachusetts.

## 29. Headings

This instrument's paragraph headings are for quick reference and convenience only and do not alter, amend, or otherwise affect the terms, conditions, and agreements set out herein.

## 30. Renewal Options

Tenant shall be permitted to extend this Lease for one (1) period of five (5) years provided Tenant gives Landlord one hundred eighty (180) days prior written notice that Tenant chooses to renew this Lease. The terms and conditions for each renewal period shall be the same as those contained herein, except for the minimum rent which shall be adjusted as set forth in Section 4 hereof.

## 31. Attorney Fees

In the event of litigation between the Landlord and the Tenant relative to rights, obligations and duties of either party under this Lease, attorney fees and costs shall be paid by the non-prevailing party.

## 32. Force Majeure

If either party fails to perform any of its obligations under this Lease as a result of Force Majeure, such party shall not be liable for loss or damage for the failure and the other party shall not be released from any of its obligations under this Lease, unless any Force Majeure prevents Tenant from quiet enjoyment of the Premises; in which event, rent shall abate to the extent and for the period that Tenant's quiet enjoyment of the Premises is disturbed. If either party is delayed or prevented from performing any of its obligations as a result of Force Majeure, the period of delay or prevention shall be added to the time herein provided for the performance of any such obligation.

"Force Majeure" shall mean any period of delay which arises from or through Acts of God; strikes, lockouts, or labor difficulty; explosion, sabotage, accident, riot, or civil commotion; act of war; fire or other casualty; legal requirements; delays caused by the other party; and causes beyond the reasonable control of a party.

## 33. Recording

Either party shall, upon ten (10) days written request of the other, execute, acknowledge and deliver to the other, a Notice of Lease for recording purposes. All costs and expenses related thereto shall be borne by the party requesting the Notice of Lease.

## 37. Subordination

This Lease shall be subject and subordinate to any mortgages now or hereafter a lien upon the Property and to any or all advances to be made thereunder, and to the interest thereon, and all renewals, replacements, consolidations and extensions thereof provided the mortgagee named in said mortgages shall agree to recognize the Lease of Tenant in the event of foreclosure if Tenant is not in default. Tenant shall execute and deliver whatever instruments may be required for such purposes within ten (10) days after reasonable demand in writing. Notwithstanding the foregoing, this Lease shall not be subject or subordinate to any mortgages now or hereafter a lien on the Premises unless the holder of such mortgage duly executes and delivers a non-disturbance agreement to Tenant in a form satisfactory to Tenant.

## 38. Non-Disturbance

Landlord shall obtain from any and all existing mortgagors, ground lessors and trustees that now or hereafter hold interests in the Premises, a non-disturbance agreement that provides that, so long as Tenant is not in default under the Lease, said mortgagee, ground lessor and trustee shall not join the Tenant as a party defendant in any action or proceeding foreclosing a Mortgage (unless required to foreclose the mortgage, and then only for such purpose and not for the purpose of termination of the Lease), in any eviction proceeding or in any action to terminate the ground lease, and that the Tenant's possession of the Premises and the Tenant's rights and privileges under the Lease, or any extensions or renewals thereof which may be exercised in accordance with the Lease, shall not be diminished or interfered with by the mortgagee, trustee or ground lessor, and the Tenant's occupancy of the Premises shall not be disturbed by the mortgagee, trustee or ground lessor. Prior to the commencement of Tenant's Work, Landlord shall provide such agreements from all such parties now holding interests in the Premises. If Landlord fails to provide such agreements, Tenant may, at its option, terminate this Lease with no further liability hereunder. If Landlord fails to obtain such agreements from mortgagees, trustees or ground lessees that obtain interests after the extension of this Lease, the foregoing provisions of Section 37 shall be of no force and effect.

## 39. Brokers

Landlord has entered into a separate brokerage commission agreement with Harold Eisenhauer of The Eisenhauer Group. Each party warrants and represents to the other that no brokerage commission is due to any person, firm, or entity with respect to this Lease except as set forth above and each party agrees to indemnify and hold the other party harmless with respect to any judgement, damages, legal fees, court costs, and any and all liabilities of any nature whatsoever arising from a breach of said representation.

## 40. When Lease Becomes Binding

Employees or agents of Landlord or Tenant have no authority to make or agree to make a lease or any other agreement or undertaking in connection herewith. The submission of this document for examination and negotiation does not constitute an offer to lease, or a reservation of, or option for the Premises, and this document shall become effective and binding only upon the execution and delivery hereof by both Landlord and Tenant. All negotiations, considerations, representations, and understandings between Landlord and Tenant are incorporated herein and may be modified or altered only by agreement in writing between Landlord and Tenant.

IN WITNESS WHEREOF, the parties have executed and delivered this Lease as of the date first above written.

WITNESS:                          LANDLORD:  ONE MAPLE STREET ASSOCIATES

                                       by: _____
_____        Name: _____
                                       Title: _____


                                  TENANT:  BRUEGGER'S CORPORATION

(Corp Seal)                            by: _____
Attest: _____        Name:  Stephen A. Finn
              Secretary                Title:  President

Bruegger's Corporation Lease
Page 18

COMMONWEALTH OF MASSACHUSETTS   )
  )     ss.
COUNTY OF ESSEX   )

On this ___ day of July, 1993, before me personally appeared _____,
to me personally known, who, being by me duly sworn, did say that he is the_____
of ONE MAPLE STREET ASSOCIATES, a Massachussetts Limited Partnership, and that said
instrument was signed on behalf of said Limited Partnership, and said_____
acknowledged execution of said instrument to be the free act and deed of said_____
and acknowledged execution of said instrument to be his free act and deed and the free act and
deed of the Limited Partnership.

_____

Name:_____

My Commission expires: _____    Notary Public (Seal)


STATE OF VERMONT   )
  )     ss.
COUNTY OF CHITTENDEN   )

On this 23rd day of July, 1993 before me appeared Stephen A. Finn, to me personally
known, who, being by me duly sworn, did say that he is the President of BRUEGGER'S
CORPORATION and that the seal affixed to the foregoing instrument is the corporate seal of
said corporation, and that said instrument was signed and sealed in behalf of said corporation
by authority of its board of directors, and said President acknowledged execution of said
instrument to be the free act and deed of said corporation.

*Amy L. McFeeters*

Name: Amy L. McFeeters

My Commission expires: 2/10/95    Notary Public (Seal)

# EXHIBIT A
# LANDLORD'S WORK

Landlord, at Landlord's sole cost and expense, shall prepare the Premises as follows to conform to BRUEGGER'S FRESH BAGEL BAKERY standard physical criteria:

a.   Tenant accepts Premises "as is" except Landlord shall demolish existing interior tenant improvements.

b.   Premises shall be broom clean.

c.   Landlord will provide Seven Thousand Five Hundred Dollars ($7,500.00) to the Tenant as a Tenant Improvement Allowance upon Tenant's first opening for business.

## EXHIBIT B
## LEASE COMMENCEMENT AGREEMENT

To Lease dated the ___ day of _____, 19___ between One Maple Street Associates, Landlord, and Bruegger's Corporation, Tenant, demising 2,300 square feet at 11 Maple Street, Danvers, MA.

Pursuant to the provisions of the above Lease, Landlord and Tenant intending to be legally bound hereby, agree that the term of said Lease commenced on the ___ day of _____, 19__ and the term shall expire on the ___ day of _____, 19__, unless sooner terminated or extended as herein provided. Landlord and Tenant further agree that the rent shall commence on the ___ day of _____, 19__.

Tenant agrees that, as of and through the date hereof, Landlord has fully and timely complied with and performed each and every of its obligations as set forth in the Lease and that Tenant has no claim(s) or cause(s) of action against Landlord whatsoever and has no right to any setoff(s) against any and all sums due Landlord.

Landlord agrees that, as of and through the date hereof, Tenant has fully and timely complied with and performed each and every of its obligations as set forth in the Lease and that Landlord has no claim(s) or cause(s) of action against Tenant whatsoever.

IN WITNESS WHEREOF, the Landlord hereto has duly executed this supplement to said Lease as of the ___ day of _____, 19__.

WITNESS:                                      LANDLORD: ONE MAPLE STREET ASSOCIATES

                                              by:_____

_____                    Title:_____


IN WITNESS WHEREOF, the Tenant hereto has duly executed this supplement to said Lease as of the ___ day of _____, 19__.

WITNESS:                                      TENANT: BRUEGGER'S CORPORATION

                                              by:_____

_____                    Title:_____


Bruegger's Corporation Lease
Page 21

# EXHIBIT C
## ASSIGNMENT OF INTEREST IN LEASE AS COLLATERAL

### COLLATERAL ASSIGNMENT OF LEASE

THIS ASSIGNMENT is by and between Bruegger's Corporation, d/b/a Bruegger's Bagel Bakery, a Vermont corporation with a mailing address of 159 Bank Street, P.O. Box 374, Burlington, Vermont 05401 ("Assignor") and Bank of Vermont, a banking association organized and existing under the laws of the State of Vermont ("Assignee").

WHEREAS, Assignor desires to borrow funds from Bank of Vermont ("Assignee") to enhance its business operations;

WHEREAS, as a condition to its agreement to lend funds to Assignor, Assignee requires that Assignor assign tenant's interest under the Lease as collateral to Assignee, and that the Landlord agree to certain matters concerning the Lease;

1.    In consideration of the sum of Ten and More Dollars, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby assigns, transfers and sets over to Assignee all of Assignor's right, title and interest as tenant under a certain lease with One Maple Street Associates ("Landlord") dated as of July ___, 1993 ("Lease"), a Notice of said Lease was recorded on _____ _ in Book ____, Page ___ of the Essex County Registry of Deeds, relating to certain lands and premises in the City of Danvers, County of Essex and Commonwealth of Massachusetts, more particularly described in Exhibit A attached hereto ("Premises"), TO HAVE AND TO HOLD said leasehold, with all privileges and appurtenances thereof to the said Assignee, Bank of Vermont, and its successors and assigns, to their own use and behoof forever.

2.    This Assignment is made to secure to the Assignee the performance by Assignor of Assignor's obligations under a certain Loan and Security Agreement dated May 5, 1993, as it may be amended from time to time ("Agreement") by and between Assignee and Assignor and under any other instruments or obligations granted by Assignor to Assignee pursuant thereto, and for any future advances to Assignor pursuant to said Agreement. The full performance of such obligations will render this Assignment void, but otherwise this Assignment shall be of full force and effect.

3.    Notwithstanding this Assignment, Assignor will be and remains solely responsible for the performance of all of its undertakings as tenant under the Lease, including the payment of rents, and until notified by the Assignee in writing that a default has occurred under the terms and conditions of the obligations secured by this Assignment, Assignor shall retain all rights to possess and manage the Premises to the extent provided in the Lease. This Assignment constitutes neither a novation nor a contract of suretyship.

4.    Specifically included in this Assignment is the right of the Assignee to re-assign the Assignor's right, title and interest under the Lease in the event of Assignor's default under the Agreement or under any other instrument or obligation granted pursuant to the Agreement, provided Assignee first obtains Landlord's written consent to do so, which consent shall not be unreasonably withheld or delayed. Notwithstanding the foregoing, Assignee shall have the right to assign the Assignee's right, title and interest under this Collateral Assignment of Lease at anytime, without the Landlord's consent, to any entity affiliated with the Bank of Boston; provided that Assignee shall provide written notice of any such assignment to the Landlord.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed this ___ day of _____, 1993.

ASSIGNOR:    Bruegger's Corporation
d/b/a Bruegger's Bagel Bakery

(Corp Seal)

By:_____
Stephen A. Finn, President

ATTEST:

By:_____    By:_____
Dianne Schwartz, Secretary           Steven P. Schonberg, Treasurer


ASSIGNEE:    Bank of Vermont

By:_____

Name:_____

(Corp Seal)                              Title:_____

ATTEST:                                  By:_____

Name:_____

By:_____         Title:_____
            ,Secretary


STATE OF VERMONT
CHITTENDEN COUNTY, SS.

        On this ___ day of July, 1993, before me appeared Stephen A. Finn, to me personally known, who, being by me duly sworn, did say that he is the President of Bruegger's Corporation, d/b/a Bruegger's Bagel Bakery and that the seal affixed to the foregoing instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors, and said President acknowledged said instrument to be the free act and deed of said corporation.


My Commission Expires:_____        _____
                                           Name:
                                           Notary Public (Seal)


Bruegger's Corporation Lease
Page 23

STATE OF VERMONT
CHITTENDEN COUNTY, SS.

      On this ____ day of July, 1993, before me appeared Steven P. Schonberg, to me personally known, who, being by me duly sworn, did say that he is the Treasurer of Bruegger's Corporation, d/b/a Bruegger's Bagel Bakery and that the seal affixed to the foregoing instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors, and said Treasurer acknowledged said instrument to be the free act and deed of said corporation.

My Commission Expires:_____

Name:_____
Notary Public (Seal)

STATE OF VERMONT
CHITTENDEN COUNTY, SS.

      On this ____ day of _____, 1993, before me appeared _____, to me personally known, who, being by me duly sworn, did say that he is the _____ of the Bank of Vermont and that the seal affixed to the foregoing instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors, and said _____ acknowledged said instrument to be the free act and deed of said corporation.

My Commission Expires:_____

Name:_____
Notary Public (Seal)

STATE OF VERMONT
CHITTENDEN COUNTY, SS.

      On this ____ day of _____, 1993, before me appeared _____, to me personally known, who, being by me duly sworn, did say that he is the _____ of the Bank of Vermont and that the seal affixed to the foregoing instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors, and said _____ acknowledged said instrument to be the free act and deed of said corporation.

My Commission Expires:_____

Name:_____
Notary Public (Seal)

## CONSENT TO COLLATERAL ASSIGNMENT
## AND AGREEMENT OF LANDLORD

This Consent and Agreement is made by One Maple Street Associates ("Landlord"), Landlord under the Lease described in the foregoing Collateral Assignment of Lease.

WHEREAS, Landlord desires to set forth in writing its consent to the foregoing Collateral Assignment of Lease and certain other provisions to which it has agreed;

NOW, THEREFORE, in consideration of the premises herein set forth and other good and valuable consideration, Landlord hereby agrees as follows:

1.    Landlord consents to the foregoing Collateral Assignment from Bruegger's Corporation ("Tenant") to Bank of Vermont ("Lender") of Tenant's rights under the Lease as provided in the foregoing Collateral Assignment.

2.    Landlord agrees to give written notice to the Lender of any default under the Lease at the same time Landlord gives written notice to Tenant. Landlord will give written notice to Lender at the following address:

> Bank of Vermont
> 149 Bank Street
> P.O. Box 949
> Burlington, Vermont 05402
> Attn: Stephen Friedman

or such other address as the Lender may provide to the Landlord from time to time by written notice to the Landlord at the following address:

> One Maple Street Associates
> c/o William C. Kaplan
> P.O. Box 262
> Cambridge, MA 02140-0262

Lender shall have the right, but not the obligation, to cure or cause the cure of any such default during the cure periods set forth in the Lease. If Lender cures or causes the cure of such default during the applicable cure periods, Landlord shall not be entitled to terminate the Lease based upon said default.

3.    Landlord agrees that Lender's security interest, if any, in any removable trade fixtures purchased and installed on the premises by Tenant shall be superior to any interest of Landlord in said items. It is understood and agreed that trade fixtures shall not include any portion of the heating, ventilation and air conditioning systems and shall not include any items which may not be removed under the terms of the Lease.

4.    Except as provided in Paragraph 4 of the Collateral Assignment of Lease, nothing contained in the Collateral Assignment of Lease or this Consent and Agreement shall alter, affect or impair any of the terms, covenants or conditions contained in the Lease and Tenant shall remain fully obligated to Landlord for all of its obligations under the Lease. Furthermore, except for an assignment to any Bank of Boston affiliate, Landlord's consent to the foregoing Collateral Assignment shall not be deemed a consent to any further assignment or subletting of the demised premises without the express written consent of Landlord.

5.   . Landlord warrants that it possessed all necessary right, title, interest and authority to enter into the Lease with Tenant and convey the leasehold estate described in the Lease, and possesses all necessary right, title, interest and authority to enter into this Consent to Collateral Assignment of Lease and Agreement of Landlord.

IN WITNESS WHEREOF, Landlord has caused this Consent and Agreement to be executed as of the date first above written.

WITNESSES:                         LANDLORD: One Maple Street Associates

_____            By:_____

_____            Name:_____

                                   Title:_____

COMMONWEALTH OF MASSACHUSETTS
ESSEX COUNTY, SS.

On this ____ day of _____, 1993, before me personally appeared _____, to me personally known, who, being by me duly sworn, did say that he is the _____ of One Maple Street Associates and acknowledged said instrument to be his free act and deed and the free act and deed of the Limited Partnership.

My Commission Expires:_____       _____
                                          Name:
                                          Notary Public (Seal)

FNO6\BRUEGGERS\DAVERS.CAL

Bruegger's Corporation Lease
Page 26